## SCHUTTE v. MILLER, Alien Property Custodian et al.

(Court of Appeals of District of Columbia. Submitted February 4, 1925. Decided March 2, 1925. Motion for Reargument Denied March 14, 1925.)

No. 4099.

1. War ⬤⟶12—Resident alien held not entitled to recover from Alien Property Custodian interests of nonresident alien partners in American firm; "interest, right, or title."

Resident alien, partner in foreign firm, entitled to 5 per cent. of profits of American partnership, made up of foreign firm and part of individuals composing it, all of whom were nonresident aliens, who was permitted by Alien Property Custodian to liquidate assets of American partnership and retain 5 per cent. of proceeds, *held* not entitled to recover from Alien Property Custodian interests of other partners, to be held by him until such time, "if ever," as his interest in foreign firm should be satisfied; his claim not being an "interest, right, or title" in property so held, within Trading with the Enemy Act, § 9(a), as amended (Comp. St. Ann. Supp. 1923, § 3115½e).

2. Partnership ⬤⟶282—Resident alien, partner in foreign firm, owning interest in American firm, on liquidation of assets of American firm, held not entitled to retain his portion of assets which would go to foreign firm.

Resident alien, owner of 20 per cent. interest in foreign firm and entitled, because of such interest, to 5 per cent. of profits of American firm, composed of foreign firm and of part of individuals composing it, who was permitted by Alien Property Custodian to liquidate assets of American firm, *held* not entitled to retain out of such assets 20 per cent. of interest belonging to foreign firm in addition to his 5 per cent. of profits.

Appeal from Supreme Court of District of Columbia.

Suit by Fritz Schutte against Thomas W. Miller, as Alien Property Custodian, and Frank White, as Treasurer of the United States, wherein defendants filed counterclaim. Decree for defendants, and plaintiff appeals. Affirmed.

A. K. Nippert and William Sabine, both of Washington, D. C., for appellant.

D. H. Stanley and Peyton Gordon, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. Appeal from a decree in the Supreme Court of the District of Columbia in favor of the defendants, appellees here, in an action by the plaintiff, appellant here, to recover possession of moneys derived from the liquidation of a New York copartnership, composed in part of alien enemies and the plaintiff, and held by the Alien Property Custodian as the property of alien enemy members of the copartnership, plaintiff having been permitted to retain his share. The theory of the bill is that the plaintiff, being also a member of a German copartnership of which these alien enemies were members, and which copartnership has not been liquidated, is entitled to retain possession of moneys thus derived from the liquidation of the New York copartnership, and "to hold and keep the same until such time, if ever, as he should be satisfied of his capital interests in the said Bremen [Germany] firm."

Plaintiff, although a citizen of Germany, has resided in New York City since 1907. In October, 1912, the copartnership firm of Schutte, Bunemann & Co., of New York, was formed; the members being Johann (Hans) Friederich Wilhelm Thiermann, Edgar H. L. Steinthal, Carl Johann (Fritz) Schutte, Friedrich Herman Carl Bunemann, Carl Schutte, and Georg Julius Schutte. In January, 1913, a copartnership was formed at Bremen, Germany; the members of that firm being Carl Schutte, Georg Schutte, Carl Bunemann and Fritz Schutte. Of the profits or losses of the Bremen firm, plaintiff was to receive or be liable for 20 per cent. The profits or losses of the New York firm were to be divided as follows: Bremen firm, 50 per cent.; Thiermann, 25 per cent.; Steinthal, 20 per cent.; and plaintiff (not having invested any capital in the New York firm), 5 per cent. An examination of the copartnership agreements establishes, as was testified by Georg Schutte on behalf of plaintiff, that "the two partnerships of the Bremen firm and the New York firm are separate and distinct organizations." The personnel of the two differed, as did the interests and liabilities of the members. Plaintiff was the only member of the Bremen firm residing in the United States, and subsequent to 1913 all the members of the New York firm, except plaintiff and Steinthal, resided in Germany.

Subsequent to the entry of the United States into the World War, the plaintiff procured from the War Trade Board a license permitting him, under the supervision of the Alien Property Custodian, to liquidate the interests of Carl Bunemann, Georg Schutte, and Hans Thiermann in the New York firm. Thereafter the Alien Property Custodian determined that these three persons were alien enemies, and required plaintiff to deliver to

him approximately $200,000, the aggregate of their respective interests in the New York firm. As already stated, plaintiff was permitted to retain the value of his interest in that firm.

In his petition plaintiff avers that his capital investment in the Bremen firm during the year 1914 was of the value of $214,380, which he alleges "was unimpaired as of April 6, 1917." He avers that he now is entitled to that amount "and accrued profits thereon"; that he cannot withdraw his invested capital from the Bremen firm, "though he is no longer a partner thereof, but is entirely dependent for the recovery of his capital invested in the said Bremen firm upon such relief as this court may grant." In his testimony he stated that "he had been a partner in the Bremen firm since 1914, and had invested in that firm 900,000 marks in 1914, since which time his capital interest had not been less than that amount, but had been increased from profits, and that up to the present time (1923) he had received from that firm nothing on account of this capital investment or partnership interest. The Bremen firm agreement had not at any time, up to April 6, 1917, been terminated or modified by the partners."

There was no evidence that plaintiff ever had sought a liquidation of the German firm, but the witness Georg Schutte did testify as follows: "If the Bremen firm were liquidated, there would be enough money to pay Fritz Schutte [plaintiff] his 900,000 marks interest in the Bremen firm. The Bremen firm did not liquidate, because the partners did not want to liquidate, because a liquidation would subject them to the payment of heavy taxes in Germany upon the profits." This witness further testified that "Fritz Schutte did not put any money into the American partnership when he went into it. The only interest Fritz Schutte had in the capital investment of the American firm was derived through the fact that the Bremen firm had an interest in the capital of the American firm and Fritz Schutte was a member of the Bremen firm. * * * Had the New York firm been liquidated prior to the war, Fritz Schutte would not have been allowed to take any of the money derived from the liquidation, except 5 per cent. of the profits. Except for the 5 per cent. profits in the New York firm, all the rest of the money of such liquidation would have been transmitted to the Bremen firm, or the Bremen firm after Steinthal and Thiermann's share had been deducted."

It thus appears that the Bremen firm is a

going concern, that the plaintiff still is a partner therein, and that no attempt to liquidate it has been made or contemplated. Plaintiff's interest in that firm therefore is entirely speculative. Aside from the very general statement of the witness Georg Schutte that "if the Bremen firm were liquidated there would be enough money to pay Fritz Schutte his 900,000 marks interest in the Bremen firm," there is no evidence as to the assets and liabilities of that firm. The plaintiff, having liquidated the American firm and been permitted to retain the entire value of his interest therein, now seeks, because he is a partner in the Bremen firm, to have delivered to him the entire proceeds of the liquidation of the interests of the alien enemy partners, to be held by him until such time, "if ever," as his interest in the Bremen firm shall be satisfied.

[1] The mere statement of the proposition suggests the answer. How, in reason, can it be said that such a nebulous claim constitutes "an interest, right, or title in money or other property demanded or seized by the Alien Property Custodian," within the meaning of section 9 (a) of the Trading with the Enemy Act (40 Stat. 419; 41 Stat. 35, 977 [Comp. St. Ann. Supp. 1923, § 3115½e])? Mayer v. Garvan (D. C.) 270 F. 229 (C. C. A.) 278 F. 27, is not in point. That case involved a single partnership, between Mayer and German subjects. The Alien Property Custodian seized the assets of the partnership in the United States, and denied Mayer's right to assert any interest in those assets. Thereupon Mayer brought suit, and the court held that he was entitled to receive the American assets under section 8 (a), being Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½dd, for the purpose of liquidating the partnership and satisfying his interest in it. But in the present case the plaintiff already has been allowed the value of his interest in the American firm, so that this suit does not involve the protection of that interest. On the contrary, the fund plaintiff seeks to have delivered to him belonged to alien enemy members of the American firm, who happened also to be members of the Bremen firm. This fund, therefore, was not an asset of the Bremen firm, but property of individual members of that firm, a copartnership having a distinct identity, and over which the American courts have no control. The distinction between the Mayer Case and this is broad and vital.

[2] It appears that the plaintiff retained a certain percentage of the proceeds of the liquidation of the New York firm, on the

theory that the Bremen firm was entitled to 50 per cent. of the profits, and he in turn entitled to his pro rata share as a member of the Bremen firm. The defendants filed a counterclaim covering the amount thus held by him and aggregating $35,000. This counterclaim was allowed by the court below. Since we already have found that plaintiff's interest in the American firm was 5 per cent., and no more, it follows that this ruling by the trial court was correct.

An examination of the record leads irresistibly to the concluson that to permit the delivery to the plaintiff of ,this alien enemy fund would defeat the purpose of the statute.

The decree is affirmed, with costs.

Affirmed.